May it please the court in all its locations. The district court in this case, our contention, has abused its discretion by denying Richard Moon's petition for a Certificate of Innocence under 28 U.S.C. 2513A. And I think to resolve this question, and we have to get to the more fundamental question, is if a South Carolina youthful offender sentence that carries an actual service of less than one year for the offender is an adult conviction, or is it more akin to a juvenile adjudication? And to make that determination, we defer to the state of South Carolina in making that assessment. Mr. Adams, that's only one of the three criteria that you have to meet in order to get a Certificate of Innocence. This Certificate of Innocence is something because it allows you actually to sue for damages. And so because it opens up the possibility not just of a release, but of a suit for damages, the criteria are rather strict. Now, you talk about what the YRA is under South Carolina law. I mean, there's some problems with that. But even if you purely arguendo were to succeed on that problem, there are two other problems to this, which I understand you're going to have to meet. Yes, sir, that's correct. I do believe the one that is the point of the most contention is prong two and part two, the sub part two of prong two, which is about whether these actually are prior convictions under South Carolina law or not. But yes, sir, Judge Wilkinson, we do have to prevail on all three prongs because the district court judge denied us on all three prongs. But if we can't win on part two, the second prong of part two, that it was no offense under U.S. law or South Carolina law, then there's no path forward for us. There should be. Why do you think the standard in light of the Williams and Sellers cases, why do you think the standard is on the actual times served rather than the possible penalty? Judge, that gets back to the South Carolina youthful offender scheme that was set up. Most jurisdictions, most states, the federal courts have a bifurcated scheme where they're juvenile offenders and adult offenders. South Carolina in the late 1960s passed the Youthful System. They have juvenile offenders, adult offenders, and then they have offenders. The question is, whatever you think it is, were the felonies punishable by more than one year? Yes, yes, sir, clearly they were. The Youthful Offender Act, the trial judge in South Carolina who sentenced Mr. Moon could have made the decision not to sentence him as a youthful offender and could have sentenced him to more than one year as an adult conviction. What's that got to do with the fact that he violated section 922G? That's the offense. Well, the offense is a 922G that was enhanced to a 922G. The sentence was enhanced? Yes, sir. All right, 922G, he did hold a gun, didn't he? He had a shotgun in his car at the time of the traffic stop. Yes, sir. Clearly, we don't dispute that. How do you get around prong one, then? Our contention is that that, in fact, should not have been a conviction because these were juvenile adjudications that he had under the YOA Senate, so he didn't have a predicate felon. That's an enhancement portion. I'm talking about the offense, possessing a firearm. He would have been a possession of a firearm, not by a felon. And under South Carolina law, you can have a gun under certain circumstances in your car. So our contention is without the predicate felonies, he's not... Have you ever had the 922G conviction voided in some way? I realize you think, well, this shouldn't be a 922G offense. But the point is, the 922G is on the books. And we can't re-argue that up here as to whether the 922G conviction should or should not be. We have to focus on whether any court, either on direct appeal or collaterally, has reversed and overturned this conviction. Has the 922G conviction ever been set aside? No, sir, it has not. We were... So you're stuck with it, aren't you, if it's not been set aside? We are stuck with it. We were in the predicament, as a lawyer in this type of case would be in the predicament of either pursuing relief under the certificate of innocence as quickly as possible, so as not to default on the claim, or to try to seek a cor novis writ to reverse the underlying 922G. This is not the court in which to rule. This is not the court to rule on the validity of a 922 earlier 922G offense. You can challenge that on direct appeal. You can challenge it on collateral attack. But I don't think you can bring this kind of suit and expect us to delve into the prior conviction, which neither a habeas court or a court of appeals on direct appeal from the criminal conviction has ever set aside. And if it hasn't been set aside, you're stuck with it. And this court is not the one to say, we don't have the record before us, and I don't know what we'd be appealing from. And this court's not the one to set aside that conviction, and it hasn't been set aside. And that's the unconstitutional conviction, not the sentence enhancement. Yes, sir, Judge, we were looking at the enhanced conduct, and we're seeking a certificate of innocence or of unjust incarceration for the time period above the 922G. We did not challenge the 922G time in requesting a certificate of unjust incarceration for that. I understand the position that you raised, that those challenges were not made at the time of sentencing and were made on direct appeal or at the initial 2255 by Mr. Moon. Well, that's where they should have been raised. Yes, sir, I would have appreciated that as well. We believe that there will be a path forward for the over-incarceration under the certificate of innocence statute based on the that we're missing here is that this is up here on an abuse of discretion standard. And the question a district judge has to ask himself is, considering these three prongs, not only must he ask himself whether these three prongs are all met as a matter of law, but I think at the end of the day, the district court has to come to sort of conclusion that this individual has been truly wronged by society and not only truly wronged by society, but truly wronged to the extent that we are providing the individual a cause of action in damages against the government. And what is there in this, and I can't see anything in this record that would put this person in a position of saying, I have been truly deeply wronged by society. I am innocent, notwithstanding the fact my conviction has never been set aside, and I get to go against the government in damages. And, you know, that's why we have an abuse of analysis. This individual is not deserving of a Certificate of Innocence. It's called a Certificate of Innocence for a reason. And the conviction, the guilty conviction hasn't been set aside. So how can there be a Certificate of Innocence? That's what the Certificate is called. And it's called that for a reason. Yes, sir. The Certificate of Innocence legislation was passed in 1938. It was divided into two parts, I believe, in 1948. And initially, the act was called a Compensation for Unjust Imprisonment. They created, when they separated the statute, they created the second part, which had been, it was one part initially, and said a Certificate of Innocence. We think certainly unjust imprisonment, when a man who had a guideline range of 46 to 57 months, serves close to 10 years, just shy of 10 years, he is over-sentenced. He was over-sentenced. Due to a change of law. He was not innocent. In other words, he possessed the gun as a felon, and he violated 922 G. 922 G is the offense he felt guilty to. And he was sentenced under that, and the enhancement of 924 E. But the crime, the facts were never set aside. That crime of 922 G was never set aside. And the real question is, that's a pretty, you can't get through that gate, that he's innocent of that crime. That's the only crime at issue. Our position is he is innocent of that crime, because the trial attorney did not raise the issue about the clear definition of the YOA, that these would be juvenile adjudications and not felony convictions. Mr. Adams, this is what we're trying to get through. What you just expressed to us is an ineffective assistance of counsel claim, that the trial attorney failed to do this, and the trial attorney failed to do that. But the point I keep trying to explain is that this is not the forum. You have to do this in a collateral proceeding for ineffective assistance of counsel, or you have to do it in a direct appeal, or you have to do it somewhere and you have to do it. This is just not at all the right forum to bring up these issues. And you say he was over-sentenced. But that, again, puts you in a difficult position, is saying you are concentrating on sentencing and the relative strictness of the sentencing, where the statute seems to focus on a conviction, and the conviction and the sentence are two different things. You're focusing on what you think was an excessive sentence, but that doesn't speak to the underlying problem. That's what I'm trying to get through. You are getting that through, Judge. I understand your position. We have a contrary position. I understand completely where you're coming from. We believe that we should focus on the conduct. There is no way for us, it would be an out of time, ineffective assistance of counsel. Conduct was the possession of a gun, wasn't it? It would be by a prohibited person, and our contention is he was not a prohibited person at the time. Who told you that? In other words, if you're right about that, then he shouldn't have been convicted. Correct. But you haven't set aside the conviction yet as a precondition to get into this statute. You got to go somewhere to get rid of that conviction because you say he was wrongly convicted. This statute requires to have the conviction set aside already, right? Not necessarily, Judge. What's the language? The language is significantly the same as it was in 1938 and as it was amended in 1948. It says the conviction has been reversed or set aside on the ground that he's not guilty of the offense for which he was convicted. How do you get around the two verbs, reversed or set aside? Well, how we get around that is this was before there was an Armed Career Criminal Act, some 45 years before there was an Armed Criminal Act. My question is, his conviction has not been reversed or set aside? I agree with that. Well, that's the first sentence of this whole statute. But we believe the enhancement, there was no such thing as an enhancement at the time the statute was created. So we think as a matter of interpretation that this should be interpreted to include the enhancement and we made that argument in our brief. So we're supposed to conclude that when the statute says you have to get a reversal or set aside a conviction that we only need to see if there's a mistake in the sentencing? We believe under the 924E, which has such a dramatic effect. Oh, I'm talking about 2513. We're construing 2513. Yes, sir. I believe that it should be construed as a way that would incorporate sentencing enhancements that passed decades later. Yes, sir. Well, because even at the time, whether it be 1935 or 1948 or whatever, there were still judges who were strict sentencers and there were judges who were lenient sentencers. And, you know, there could be at the time of the passage of the act, that would still be what you would, under your theory, come to us and complain of an overly harsh sentence. So I don't think the underlying theory of it is changed. But at any rate, I'll ask my colleagues if they have a question. If they do not, we'll hear from your opponent. Thank you, Judge. As I'm sitting down, I do think the 924E is of a different character than just a harsh sentencing judge who would be within the statutory range. It significantly changed the statutory range for Mr. Moon. Thank you. All right. We thank you. And Mr. Watkins? Good morning, your honors. My name is Bill Watkins and I represent the government in this case. It's a pleasure to be with you all this morning. Your honors, the first hurdle, as you've talked about with Mr. Adams, is the conviction has to be set aside because he's not guilty of the offense of conviction. And that certainly isn't met here. He was convicted of 922G and that conviction still stands. Mr. Moon was resentenced by the district judge and was very happy, it appears, to get that result to where he got time served plus 10 days. There was no appeal. There was no 2255 in that matter. He did not challenge his conviction at all. Why shouldn't that just end it? Judge, I think it can just end it right there. I think this court could end it on that matter and move forward without getting into any intricacies of the YOA or anything else. As a matter of fact, Mr. How we can get to the YOA? In other words, this is not a statute to challenge convictions. This is a statute to declare innocence and as a precondition, the conviction has to be, in some other proceedings, set aside or reversed. That's the very first sentence of the whole statute. Judge, I agree with you completely that if Mr. Moon had thought he had been wronged when he was resentenced to time served. He was wrong. The court said he was wrong and we've applied these things retroactively and so forth. He over-served his time. But this statute doesn't come to somebody that was improperly sentenced. It focuses on somebody that served time and that there was a total mistake. A whole conviction is set aside or reversed and he didn't even commit the acts. And the conviction, the initial conviction, was not prompted from his own conduct. I mean, every one of those facts focuses on the possession of a gun. And that has not been set aside. Correct. And Mr. Moon concedes that he possessed the gun, Your Honor. And I agree with you completely. This court could find that that conviction has never been set aside and we're done. I know Mr. Moon has argued, well, it's not the 922-G, but it's 924-E. But as Your Honors well know, that's not an offense of conviction. It's a sentencing enhancement. 924-E does not say you have to possess a gun. It does not set forth any conduct that is the offense. It relies on 922-G. Correct. Without 922-G, 924-E is meaningless in this case. Actually, Your Honors, if you look at this, Mr. Moon never actually served an armed career criminal sentence. He served, as Mr. Adams pointed out, 9 years, 2 months, and 17 days, which with the statutory maximum being 10 years under 924. All right, hold on. Judge Quattlebaum, did you have a question? I didn't know whether you did or not. No, not right now. Thank you. Okay. All right. Will, do you have anything you want to add on the YOA or the third prong? Judge, the only thing I'll add is we submitted a 28-J letter on Sitton, that even if you could get to the prong on the YOA statute, this court has made clear that the conviction that we look at and how you measure it is how much time possibly could have been handed out by the trial judge. Williams and Sellers are still good law. You look at the possible sentences the youthful offender could face. He was sentenced in General Sessions Court, which is an adult conviction, and it's been conceded that he could have gotten well over a year. So I would just, Your Honor, appeal to the Sitton case, if to the extent you even need to get any further than that. Sir, you covered all that in your brief as well. Yes, sir. He was 19, wasn't he? Yes, sir. He was an adult under federal and South Carolina law, Judge Brattlebaum, absolutely. And if there are no further questions from this panel, the government would rely on its brief. All right. Any further questions? Okay. Thank you, Mr. Watkins. I appreciate that. Thank you, sir. Mr. Adams, you have some time reserved for rebuttal. I did, Judge. I'll be very brief. This only applies if the YOA argument is dealt with on its merits. We cited to the brief, and there are two other cases that I ran across, and we relied heavily on U.S. versus English from this panel, an unpublished decision, a panel that Judge Wilkins was a member of back in 1999. In that case, they cite and talk about the 11th Circuit's treatment of the youthful offender scheme in South Carolina in the case of United States versus PINION, P-I-N-I-O-N, in 1993. The counsel doesn't, you were just, your colleague just talked about the Sitton case, which is a very recent case, and a published decision. Doesn't, to the extent there might have been an argument about the Youthful Offender Act, you know, under English, isn't that pretty much clarified by Sitton? No, sir, because Sitton, and the opinion in Sitton did not express how long Mr. Sitton served. I went back and looked at the briefing in that case, and he served about 14 months in custody. He served more than one year, which is consistent with our argument that if somebody's under a youthful offender and serves more than one year, it is clearly an adult conviction. Our position is that's clearly an adult conviction. Our position is that if they serve under one year, or have the sentence probated to a probationary sentence. Sitton, I don't think, decided it along those lines. Sitton decided it's an adult conviction because you were in General Sessions Court, and the fact that there was a procedure the state had adopted that allowed youthful offenders, most of whom are adults, to possibly have some relief, didn't change the fact that it was an adult conviction. And the issue here, I think, as you acknowledged, is he had the potential to be convicted for well over a year. It just seems like, I don't really understand how, and I realize Sitton was not decided when the appeal began, so I'm not suggesting any improper briefing or anything, but given that decision, it seems like even under that basis, you got a big hurdle. We definitely have a hurdle, and Judge, you were on that panel, so I'm not here to tell you what you meant with the opinion that you signed off on. But our position is that if it's less than a year, which Sitton was not, that it is not a conviction. So the issue of how do you treat a conviction is that an adult conviction, our position is Mr. Moon's situation is different. It's simply not a conviction. And so Sitton, the dicta would be problematic for us, but it would not be the same issue that was raised in Sitton because Sitton served more than a year. There's one more case I bring to the Court's attention from the Court of Appeals of New Mexico that also addressed the South Carolina Youthful Offender Statute and consistent with the way Pinon and the unpublished Fourth Circuit English opinion dealt with it. It's State v. Smith, 129, New Mexico, 738, from the Court of Appeals in 2000. Again, those are only relevant if I get past the threshold. What if we agreed with? Where does that take us? I think if you agreed with me on everything, then we would go to the criminal claims. But if you agree with me on prong two... Oh, what if we agree that South Carolina law, under South Carolina law, he was not convicted of a felony? What we would ask you to do would be to reverse and remand with the instruction to grant the certificate... Under what authority? Under the statute for the overage for the enhancement for the sentencing overage that resulted from the enhancement. But we're not reviewing the prior conviction. This certificate doesn't address the conviction. We're not empowered into this procedure. We're not empowered to address that conviction. Well, the conduct is a focus under the statute. You want us to set aside the conviction? We ask the district judge to grant a certificate of innocence based on the overage, based on the fact that the actual conduct did not violate a statute. In order to do that, he has to be reviewing that conviction, right? Yes, sir. And how does he get a jurisdiction to review that conviction? Under the certificate of innocence statute is our argument. Thank you. Thank you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.